## IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MISSION AIR SUPPORT, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.:  CIV-21-1034-D |
| | ) | |
| KSNL AERO, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

### DEFENDANT/COUNTERCLAIM PLAINTIFF KSNL AERO, LLC'S RESPONSE TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF AND INSPECTION

Defendant/Counterclaim Plaintiff KSNL Aero, LLC ("KSNL") hereby files its Response to the Motion for Preliminary Injunctive Relief and Inspection (the "Motion") [Dkt. No. 7] filed by Plaintiff/Counterclaim Defendant Mission Air Support, Inc. ("Mission Air"). Mission Air's Motion lacks legal support and completely mischaracterizes or omits determinative facts. Mission Air would like the Court to believe that KSNL is holding its property "hostage." This is patently false. Rather, KSNL is holding Mission Air's aircraft subject to a valid possessory lien. KSNL's lien on that aircraft invalidates the legal relief that Mission Air seeks in its Petition and in the Motion. Accordingly, KSNL respectfully requests that the Court deny the Motion.

### BACKGROUND

The facts of this case are typical for a breach of contract action. Mission Air requested that KSNL perform certain inspections and repairs on two aircraft bearing Federal Aviation Administration ("FAA") Registration Numbers N32TP and N970KR.

1

KSNL performed the authorized work, and now Mission Air refuses to pay KSNL for the work on Aircraft N32TP (the "Aircraft").[1]

In May of 2021, Mission Air requested that KSNL inspect and repair the Aircraft. Based on approval and authorization from Mission Air's owner, Gary Bannister, KSNL moved the Aircraft from Conroe, Texas to its repair facility in Shawnee, Oklahoma. In compliance with Mission Air's instructions, KSNL performed work on the Aircraft until June of 2021.

On approximately June 15, 2021, individuals holding themselves out as Mission Air representatives instructed KSNL to cease work on the Aircraft. Mission Air failed and refused to pay KSNL for work already performed on the Aircraft. Due to non-payment, KSNL filed a personal property lien (the "Lien") on the Aircraft in the amount of $51,542.35 for storage, rental space, labor, money, material, skill, and supplies furnished in relation to the Aircraft. KSNL filed the Lien with the County Clerk for Pottawatomie County on August 9, 2021, and with the FAA on August 10, 2021. A true and correct copy of the file-stamped Lien is attached hereto as **Exhibit 1**.

Contrary to Mission Air's repeated contention in the Motion, KSNL is not holding the Aircraft hostage. Rather, KSNL is holding the Aircraft subject to its valid and perfected possessory Lien.

---

[1]     Mission Air eventually paid KSNL for the work completed on aircraft N970KR. After KSNL received payment, it released aircraft N970KR to Mission Air. Aircraft N970KR is not included in the scope of the Motion, as it is no longer in KSNL's possession.

In the Motion, Mission Air requests an injunction to prevent KSNL from continuing to work on the Aircraft.  However, as KSNL informed Mission Air prior to the filing of this Motion, KSNL is not performing work on the Aircraft. KSNL has no interest in performing work to benefit Mission Air, when Mission Air continues to default on its payment obligations. There can be no harm, much less "irreparable harm," where KSNL will perform no additional work on the Aircraft.

Moreover, Mission Air demands an injunction that will prevent KSNL from moving the Aircraft.  However, as KSNL again informed Mission Air before it filed the Motion, the Aircraft is unairworthy, and KSNL will only move the Aircraft as necessary to accommodate other aircraft entering KSNL's hangar for repairs. Again, there is no scenario where these minimal, on-ground movements cause "irreparable harm" to Mission Air or the Aircraft.

Finally, Mission Air requests an "injunction" to permit an immediate inspection of the Aircraft. Initially, it is unclear whether a mandatory inspection is a proper form of injunctive relief. Even if it is, this demand is nothing more than an attempt to end-run the proper discovery processes. As KSNL again informed Mission Air before it filed the Motion, Mission Air will have ample opportunity to inspect the Aircraft through discovery in the above-captioned action. More fundamentally, Mission Air completely fails to identify any "irreparable harm" that will be averted if it is permitted to do an immediate inspection. The simple reality is that KSNL is not working on or operating the Aircraft. Correspondingly, there is no risk of imminent or irreparable harm.

Simply put, Mission Air has no interest in resolving this matter on commercially reasonable terms. Mission Air has recently undergone a change in management and control. In this context, Mission Air's motivations are clear—get out of the deal that Mission Air's predecessor owner entered into with KSNL at all costs and by any means necessary. This motivation is reflected in Mission Air's litigation strategy—throw everything at the wall and see what sticks. To this point, this kitchen sink litigation strategy has yielded an injunction motion, a now-withdrawn receivership motion, and a threatened interpleader motion. There is undoubtedly more frivolity to come.

Unfortunately, Mission Air's true motivation has translated into irrational decision-making. Specifically, KSNL agreed to release the Aircraft to Mission Air if Mission Air simply paid the parts and labor for the repairs and inspections that KSNL already performed on the Aircraft—a total sum of just over $77,000. KSNL offered this resolution without demanding any form of release from Mission Air. KSNL stands by its work, and if Mission Air is ultimately dissatisfied with the repairs, it can sue KSNL for those amounts.[2] Because it prioritizes getting out of its deal over addressing this problem pragmatically, Mission Air continues to refuse to pay even parts and labor, for which KSNL is out-of-pocket.

---

[2]     As set forth in its counterclaim, KSNL is actually entitled to more than $151,000 from Mission Air, consisting of parts, labor and equipment and storage fees. [Dkt. No. 6 ¶ 22.] This latter sum results from the costs KSNL has incurred from storing the Aircraft in its revenue-generating hangar for more than five months since Mission Air instructed KSNL to stop work. KSNL is not waiving or releasing these amounts, but it was willing to release the Aircraft without payment of this amount in order to avoid this motion practice.

Mission Air is not entitled to a preliminary injunction. Mission Air's bare recitation of the standard for granting a preliminary injunction lacks substantive application to the facts in this case. As set forth above, Mission Air is not facing any immediate and irreparable harm to the Aircraft. Additionally, Mission Air has *no* likelihood of success on the merits of the replevin claim that underlies the Motion, because *replevin is unavailable where KSNL is holding the Aircraft subject to the valid, perfected, possessory Lien*. The Motion should be denied.

## ARGUMENT AND AUTHORITIES

To be entitled to a preliminary injunction, Mission Air must show that "(1) [it] will suffer irreparable injury unless the injunction issues; (2) the threatened injury...outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction, if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits." *See Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (internal citations omitted). As demonstrated below, Mission Air cannot establish a single element necessary for injunctive relief. KSNL will address each legal failure in turn.

## I.     MISSION AIR CANNOT DEMONSTRATE IRREPARABLE HARM.

"Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal quotations omitted). "The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their

issuance." *Id*. "Demonstrating irreparable harm is not an easy burden to fulfill." *Id*. Indeed, "the movant must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Id*.

Mission Air's evidence that it will suffer irreparable harm is completely based on a recitation of past interactions between Mission Air and KSNL, along with Mission Air's false claim that KSNL's work on aircraft N970KR was deficient. Mission Air's unproven assertion that KSNL performed poor work on aircraft N970KR cannot be used as evidence that KSNL is going to cause irreparable harm to Aircraft N32TP.

Mission Air provides only speculation, stating that KNSL may tamper with the Aircraft, in a failed attempt to meet its burden to demonstrate irreparable harm. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (stating "[p]urely speculative harm will not suffice"). In fact, some of the relief Mission Air requests—*e.g.*, inspecting the Aircraft—seems designed to allow Mission Air to **uncover** evidence of irreparable harm. This does not satisfy Mission Air's significant burden to demonstrate irreparable harm. *See Schrier*, 427 F.3d at 1266 (noting that speculation of what may happen in the future is not grounds for a preliminary injunction especially when the harm can be remedied through money damages).

For the sake of argument, if KSNL improperly repaired the Aircraft, an immediate inspection would not prevent irreparable harm to the Aircraft. Mission Air states that "[w]ithout the inspection, [Mission Air] will never know the current condition of the aircraft or any tampering or damage that is caused by the [sic] KSNL." (Motion at 7.) Any harm to the Aircraft, which KSNL staunchly denies, could be easily determined, calculated,

and remedied by an inspection after the Aircraft's release.  The aircraft repair process is like taking your car to a mechanic—you pay, and then you can inspect the work. You do not get to bring in a third party to inspect your vehicle before you decide whether you intend to pay for the work.

Moreover, KSNL has represented to Mission Air that it is not doing any work on the Aircraft, ant that it does not intend to do any additional work on the Aircraft. KSNL is only "touching" the Aircraft to move it into and out of KNSL's repair facility in order to accommodate work for paying customers. KSNL runs a busy and reputable aircraft repair business, and the Aircraft is currently taking up valuable space in KSNL's hangar.

Mission Air also fails to explain how harm to the Aircraft, if any were to occur, cannot be compensated by money damages. *See Schrier*, 427 F.3d at 1267 (noting that the movant provided the Court with no evidence demonstrating how the harm could not be remedied by money damages).  If the Aircraft required any additional work, the amount of damage suffered by Mission Air could be easily calculated and compensated with money damages.

Mission Air already falsely claims it had to pay KSNL's competitor, Red Cloud Aviation ("Red Cloud"), to perform work on aircraft N970KR in order to prepare it for FAA certification. Mission Air offers no evidence to suggest it would not also take Aircraft N32TP to Red Cloud and pay for additional work if KSNL released the Aircraft to Mission Air. Though KSNL denies that its work requires any remediation, any additional repair work would be properly compensated by money damages, invalidating Mission Air's need for injunctive relief.

7

Lastly, the fact that Mission Air waited over five months to seek Court intervention also weighs against its claim that it will suffer irreparable harm absent injunctive relief. *Fish v. Kobach*, 840 F.3d 710, 753 (10th Cir. 2016) (noting that "delay in seeking preliminary relief cuts against finding irreparable injury"). Representatives from Mission Air instructed KSNL to stop work on the Aircraft in June, yet Mission Air did not file the Motion until November. If Mission Air truly believed there was imminent harm, it could have paid KSNL to release of both Aircraft back in August, rather than just paying KSNL to release one aircraft. This delay has disadvantaged KSNL, as the Aircraft continues to take up space in KSNL's repair facility.

Mission Air will not suffer irreparable harm if the Court does not enter a preliminary injunction.  Mission Air's simplistic statement that "[i]f immediate injunctive relief is not granted, [Mission Air] will suffer significant injury and damages[,]" coupled with its complete lack of evidence, comes nowhere close to meeting Mission Air's substantial burden for obtaining injunctive relief. (Motion at 2.) The lack of irreparable harm to Mission Air is enough to deny the Motion without any further inquiry.

## II.   MISSION AIR CANNOT DEMONSTRATE THAT IT WILL SUCCEED ON THE MERITS.

Even if Mission Air could establish irreparable harm, which it cannot, the Motion should be denied because Mission Air cannot show a likelihood of success on the merits of its claim. While Mission Air asserts seven claims against KSNL in its Petition, it only relies on its replevin claim as the basis for the Motion. Because "the very purpose of an injunction under Rule 65(a) is to give temporary relief based on a preliminary estimate of

the strength of the plaintiff's suit…, all courts agree [the] plaintiff must present a prima facie case but need not show a certainty of winning." *Coal. of Concerned Citizens to Make Art Smart v. Fed. Transit Admin. of U.S. Dep't of Transp.*, 843 F.3d 886, 901 (10th Cir. 2016) (internal citations omitted).

Mission Air cannot even present a *prima facie* case for replevin, much less show a likelihood of success on that claim. Mission Air will not succeed on its replevin claim due to KSNL's Lien on the Aircraft, which grants KSNL rightful possession of the Aircraft. Shockingly, ***Mission Air does not mention the Lien*** anywhere in the Motion. Regardless of whether this is an error or an attempt to mislead the Court, Mission Air cannot present a *prima facie* case for its replevin claim.

Under Oklahoma law, to prevail on a replevin claim, Mission Air must show, ***by verification***, the following: (1) a description of the Aircraft; (2) that Mission Air is the owner of the Aircraft and ***entitled to immediate possession*** of the Aircraft; (3) that KSNL is ***wrongfully*** detaining the Aircraft; (4) the value of the Aircraft; (5) that the Aircraft was not taken by order, judgment, or certain other circumstances; and (6) a request for immediate delivery of the Aircraft. *See* 12 O.S. § 1571(A)(1)-(2).

Mission Air's replevin claim clearly fails. Mission Air provided no verification of its replevin claim in the Petition. More importantly, Mission Air is not ***entitled to immediate possession*** of the Aircraft, and KSNL is not ***wrongfully*** holding the Aircraft. KSNL holds a valid and perfected possessory lien on the Aircraft based on its filing of the Lien in both Pottawatomie County and with the FAA. "After filing with the FAA, no further recordation is required for a lienholder to perfect its claim of lien on an aircraft."

9

*Blue Sky Telluride, L.L.C. v. Intercontinental Jet Serv. Corp.*, 2014 OK CIV APP 39, ¶ 11, 328 P.3d 1223, 1227 (citing *McCormack v. Air Center, Inc.*, 1977 OK 192, ¶ 16, 571 P.2d 835, 838).

KSNL's Lien is valid as of the August 10, 2021, the date of filing with the FAA. 49 U.S.C.A. § 44108(b). KSNL's Lien completely invalidates Mission Air's argument that it will succeed on its replevin claim and weighs against the Court granting the Motion.

## III.    THE BALANCE OF EQUITIES FAVORS KSNL.

Mission Air's assertion that KSNL will not face any harm if the Motion is granted once again ignores KSNL's legal right to possess the Aircraft. Mission Air states that it is "simply requesting that KSNL not further tamper with the [Aircraft] and be permitted to immediate inspection of their property in which [sic] KSNL is holding hostage." (Motion at 8.)

First, KSNL has made clear that it is not tampering with the Aircraft. Second, permitting an immediate inspection violates KSNL's lien rights. Mission Air can inspect the Aircraft through discovery and will not suffer any harm from awaiting that process. Further, if Mission Air wants to conduct an immediate inspection, it can pay KSNL for parts and labor on the Aircraft, and KSNL will release the Aircraft to Mission Air. This amount is almost certainly less than any bond the Court could require Mission Air to pay if the Court were to grant the Motion.

## IV.   GRANTING MISSION AIR'S REQUEST FOR INJUNCTIVE RELIEF IS NOT IN THE PUBLIC INTEREST.

There is no public interest in granting the Motion. What little public interest exists in this dispute actually favors denying the Motion. Mission Air is correct that there is a public interest in "[enforcing] lawful contracts and business practice and [deterring] unlawful and unethical business practices." (Motion at 2.) However, Mission Air's weighing of that interest distorts the simple facts. Here, the public interest in enforcing contracts and deterring unethical business practices is best served by denying the Motion, based on Mission Air's breach of its obligation to pay KSNL for work performed on the Aircraft.

Regarding the public interest in flight safety, KSNL has properly repaired the Aircraft, and Mission Air will have the ability to inspect the Aircraft in this litigation or after paying KSNL. Because Mission Air abruptly instructed KSNL to stop work-in-progress on the Aircraft, the Aircraft is not airworthy. It must pass FAA inspections before it will be deemed airworthy. As such, there is no current public interest in flight safety relating to the Aircraft.

## CONCLUSION

Mission Air's Motion is correct only insofar as it states that a preliminary injunction is an extraordinary remedy. Here, Mission Air has failed to demonstrate any reason the Court should grant Mission Air such extraordinary relief. Mission Air cannot proffer any evidence of future, irreparable harm that cannot be compensated by money damages. Mission Air completely misses the mark when it argues that it will be successful on its

replevin claim, as KSNL's valid and perfected possessory Lien undermines that claim. Further, it is KSNL—not Mission Air—that would be damaged if the Court were to grant the Motion. For these reasons, KSNL respectfully requests that the Court deny Mission Air's request for preliminary injunctive relief in its entirety and award KSNL its fees and costs in defending against the Motion.

Respectfully submitted,

/s/ Joshua D. Burns
Joshua D. Burns, OBA # 32967
Margaret M. Sine, OBA # 34024
**CROWE & DUNLEVY, PC**
Braniff Building
324 N. Robinson Ave., Suite 100
Oklahoma City, Oklahoma 73102
Telephone: (405) 235-7700
Facsimile: (405) 239-6651
joshua.burns@crowedunlevy.com
meg.sine@crowedunlevy.com

**ATTORNEYS FOR
DEFENDANT/COUNTERCLAIM
PLAINTIFF KSNL AERO, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on December 1, 2021, I electronically transmitted the above and foregoing instrument for filing and for transmittal of a Notice of Electronic Filing through the CM/ECF system to all ECF registrants in this case as follows:

Chase McBride, cmcbride@rrmalaw.com
Nicholas Atwood, natwood@rrmalaw.com

**Counsel for Plaintiff/Counterclaim Defendant**


/s/ Joshua D. Burns
Joshua D. Burns