IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MISSION AIR SUPPORT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No.: CIV-21-1034-D |
| | ) |
| KSNL AERO, LLC, | ) |
| | ) |
| Defendant. | ) |

**DEFENDANT/COUNTERCLAIM PLAINTIFF KSNL AERO, LLC'S RESPONSE TO PLAINTIFF'S RENEWED APPLICATION FOR TEMPORARY INJUNCTIVE RELIEF OR ALTERNATIVELY INSPECTION**

Defendant/Counterclaim Plaintiff KSNL Aero, LLC ("KSNL") hereby files its Response to the Renewed Application for Temporary Injunctive Relief or Alternatively Inspection (the "Renewed Application") [Dkt. No. 26] filed by Plaintiff/Counterclaim Defendant Mission Air Support, Inc. ("Mission Air"). Apparently, having run out of new frivolous motions to file with this Court, Mission Air is now recycling old ones. Mission Air's Renewed Application is a clear waste of judicial resources. The Court already denied Mission Air's Motion for Preliminary Injunctive Relief and Inspection (the "Motion") [Dkt. No. 7] in its December 10, 2021 Order [Dkt. No. 13]. The Renewed Application is a regurgitation of the Motion's arguments, with no attempt to address their deficiencies.

KSNL acknowledges that its arguments herein are repetitive of those in its response to the Motion. However, any repetition is purely the result of Mission Air's decision to make a second request for an injunction, which suffers from the same legal and factual deficiencies as the first. Mission Air cannot establish the existence of irreparable harm

justifying the Renewed Application. KSNL has not, and will not, work on the aircraft. Any injury to Mission Air, which KNSL still disputes, could be compensated with monetary damages. Further, KSNL continues to hold the aircraft pursuant to its valid, perfected, possessory liens. As with the Motion, KSNL respectfully requests the Court deny the Renewed Application without a hearing.

## BACKGROUND

In May of 2021, Mission Air requested that KSNL perform certain inspections and repairs on two aircraft bearing Federal Aviation Administration ("FAA") Registration Numbers N32TP ("N32TP") and N970KR ("N970KR"). Based on approval and authorization from Mission Air's owner, Gary Bannister, KSNL moved the aircraft from Conroe, Texas to its repair facility in Shawnee, Oklahoma. In compliance with Mission Air's instructions, KSNL performed work on the aircraft until June of 2021.

On approximately June 15, 2021, individuals holding themselves out as Mission Air representatives instructed KSNL to cease work on the aircraft. Mission Air initially failed and refused to pay KSNL for work already performed on the aircraft. Due to non-payment, KSNL filed a personal property lien on N32TP in the amount of $51,542.35 (the "Original Lien"). KSNL filed the Original Lien with the County Clerk for Pottawatomie County on August 9, 2021, and with the FAA on August 10, 2021. A true and correct copy of the file-stamped Original Lien is attached hereto as **Exhibit 1**.[1]

---

[1] Simultaneously with the filing of the Original Lien, KSNL also filed a lien on N970KR in the amount of $86,299.87. As set forth below, N970KR is not included in the scope of the Renewed Application, as it is no longer in KSNL's possession.

2

Mission Air eventually paid KSNL for the work on N970KR. After KSNL received payment, it released N970KR to Mission Air and released its lien on N970KR. Mission Air still refuses to pay KSNL for the work on N32TP. Due to Mission Air's refusal to pay, KSNL has been forced to store N32TP in its repair station for months. The aircraft is taking up valuable space in KSNL's revenue-generating repair station and limiting the number of aircraft KSNL can repair at one time.

On February 1, 2022, KSNL filed a supplement to the Original Lien on N32TP (the "Supplemental Lien" and, collectively with the Original Lien, the "Liens") with the County Clerk for Pottawatomie County in the amount of $137,953.28. KSNL filed the Supplemental Lien with the FAA on February 2, 2022. A true and correct copy of the file-stamped Supplemental Lien is attached hereto as **Exhibit 2**. KSNL currently holds N32TP subject to its valid and perfected possessory Liens.

In the Renewed Application, Mission Air requests that the Court enter an order requiring KNSL to immediately return N32TP to Mission Air and prohibiting KSNL from "working on, moving, touching, assembling or in any way tampering or altering [N32TP]....." (Renewed Application at 1.) In the alternative, Mission Air requests the Court allow it to inspect N32TP. (Id.)

First and foremost, KNSL holds N32TP pursuant to its Liens, just as it did when Mission Air filed the first Motion. The Court's Order denying the Motion noted that, given KSNL's Liens, Mission Air could not show a likelihood of success on the merits or that the balance of equities was in Mission Air's favor. (Order at 6.)

Second, as KSNL made clear in its response to the first Motion, KSNL is not performing work on N32TP. This remains true. KSNL has no interest in performing work to benefit Mission Air, when Mission Air continues to default on its payment obligations. There can be no harm, much less "irreparable harm," where KSNL does not intend to perform additional work on N32TP. (Order at 5.)

Finally, Mission Air again improperly requests an "injunction" to permit an immediate inspection of N32TP. This Court clearly told Mission Air, "injunctive relief is a means of preventing imminent, irreparable harm; it is not a means of conducting discovery." (Id.) As with the Motion, the Renewed Application fails to identify any "irreparable harm" and focuses on disputed past actions that can be remedied, if any harm exists, by monetary damages.

Mission Air continues to waste the time and resources of this Court and KSNL. Mission Air's Renewed Application is based entirely upon the fact that, on or around February 28, 2022, the FAA created an initial Investigative Results Report (the "FAA Report") in relation to aircraft N970KR. However, the FAA Report is fraught with inaccuracies, presumably resulting from fraudulent and misleading statements that Mission Air and its agent, Red Cloud Aviation ("Red Cloud"), made to the FAA investigators. Based upon this misinformation, and just by way of example, the investigators reached the following erroneous conclusions in the FAA Report:

- With respect to Complaint No. 3, the investigators concluded that the "biggest concern" was that the aircraft's landing gear "was only inspected and lubricated, not removed and overhauled or exchanged." (Renewed Application Ex. A at 3.) This complaint evinces a fundamental misunderstanding of the maintenance manuals for this aircraft. Those

4

      manuals require a special ***inspection*** of the landing gear, ***not*** an overhaul or replacement of that gear. The logbooks reflected that this inspection had been performed before KSNL took possession of the aircraft and was not due.

- With respect to Complaint No. 17, the investigators concluded that the flap tracks and rollers were "dry and not lubricated." (Id. Ex. A at 5.) Again, this complaint is utterly inconsistent with the manuals, which require a ***dry*** powder lubricant. Of course the flap tracks were dry, because KSNL applied a dry lubricant, in compliance with the manuals.

- With respect to Complaint No. 19, the investigators found that KSNL had used pro-seal in two places on the left de-ice boot. (Id. Ex. A at 5.) This finding ignores the fact that manufacturers of pro-seal repair kits authorize the use of those products to repair pinholes in de-ice boots.

- With respect to Complaint Nos. 21 and 22, the investigators suggest that two lights were partially melted. (Id. Ex. A at 6.) However, KSNL has photographic evidence showing that these lights were in airworthy condition before the aircraft left KSNL's facility. Further, it does not appear that the investigators conducted any intensity tests to determine whether the condition of the lights would affect airworthiness.

- With respect to Complaint No. 26, the investigators asserted that "oil pressure indicates below the green arc in all power settings." (Id. Ex. A at 6.) However, KSNL has photographs, and upon information and belief, Mission Air has video that show oil pressure was within the green during an engine run conducted before the aircraft left KSNL's facility. Mission Air's agent, Thomas Fields, was there to witness this engine run.

      The Court should not lose sight of the fact that two interested parties, Mission Air and Red Cloud, initiated and directed the investigation that resulted in the FAA Report. Mission Air is directly engaged in litigation with KSNL and has every incentive to assault KSNL's workmanship in order to avoid paying the bill, while Red Cloud is a direct competitor of KSNL located at the Shawnee Regional Airport, with a long history of animosity toward KSNL. KSNL is also engaged in litigation with Red Cloud in state court in Pottawatomie County, Oklahoma. Many of the supposed "complaints" submitted to the

FAA are likely issues that arose while the aircraft was in the possession of Red Cloud, not KSNL.

Unfortunately, the investigators appear to have taken the misstatements of Mission Air and Red Cloud at face value, adopting the complaints as their findings without follow up or independent investigation, going so far as to state that a number of the complaints were "substantiated" based solely upon photographs and testimony "provided from the complainant."

Importantly, the validity of the FAA Report is not an issue that the Court needs to take up at this time. KSNL has engaged with the FAA with respect to the FAA Report. KSNL is confident that, upon review of this tainted investigation, the FAA will revise or withdraw its findings on most or all of the complaints set forth in the FAA Report.

More fundamentally, the FAA Report has no bearing on the Renewed Application presently before the Court. In part, the parties' dispute focuses on the quality of the inspections and repairs that KSNL conducted on aircraft N32TP. KSNL disputes that there are any inadequacies in its work, but if the Court were to conclude that quality issues exist, those issues are compensable by monetary damages. On the first Motion, the Court rejected the contention that the parties' dispute over *previously completed* work amounted to imminent harm, and it should do the same now. The Renewed Application is simply a poorly disguised vehicle to get the FAA Report before the Court.

Additionally, the Renewed Application continues Mission Air's pattern of misrepresentations to this Court. Mission Air tells the Court it "believes that the FAA has now taken action against KSNL due to the [FAA Report]." (Renewed Application at 3.)

This is not true. Mission Air further tells the Court it believes "that the FAA has suspended KNSL's 14 CFR Part 145 Certificate." *Id.* This is also not true.

Mission Air tries to hide behind terms like "believe" and "likely" in order to avoid sanctions for making unfounded factual assertions. Mission Air's loose affiliation with the truth must end. KSNL has confirmed with the FAA's Chief Counsel's Office that KSNL's Part 145 Certificate has not been suspended or revoked, and that such action is not under consideration. Correspondingly, there is no foundation for Mission Air's frivolous suggestion that KSNL's insurance coverage is somehow in jeopardy. KSNL respectfully requests that, in an effort to stop Mission Air's continued misrepresentations to this Court, that Mission Air be required to provide the basis for its "information and belief" that KSNL's Part 145 Certificate had been suspended or revoked.

Mission Air intends to make this litigation unnecessarily difficult and repetitive. Mission Air is still not entitled to injunctive relief. Mission Air's recycled filing, with the insertion of the FAA Report, remains lacking. Most importantly, Mission Air is not facing any immediate and irreparable harm to N32TP. And, as the Court already stated, Mission Air does not have a likelihood of success on the merits of its replevin claim and cannot show that equity tips in its favor because of KNSL's Liens. The Renewed Application should be denied.

## ARGUMENT AND AUTHORITIES

To be entitled to an injunction, Mission Air must show that "(1) [it] will suffer irreparable injury unless the injunction issues; (2) the threatened injury...outweighs whatever damage the proposed injunction may cause the opposing party; (3) the injunction,

if issued, would not be adverse to the public interest; and (4) there is a substantial likelihood [of success] on the merits." *See Schrier v. Univ. Of Co.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (internal citations omitted). Establishing "probable irreparable harm is the single most important prerequisite." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004) (internal citations omitted). As demonstrated below, Mission Air cannot establish a single element necessary for injunctive relief.

I.   **MISSION AIR CANNOT DEMONSTRATE IRREPARABLE HARM.**

"Because a showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction, the moving party must first demonstrate that such injury is likely before the other requirements will be considered." *DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1270 (10th Cir. 2018) (internal quotations omitted). "***The purpose of a preliminary injunction is not to remedy past harm*** but to protect plaintiffs from irreparable injury that will *surely* result without their issuance." *Id.* (emphasis added). "Demonstrating irreparable harm is not an easy burden to fulfill." *Id.* Indeed, "the movant must demonstrate a significant risk that he or she will experience harm that cannot be compensated after the fact by money damages." *Id.*

Mission Air bases the Renewed Application on the FAA Report. The FAA Report relates to KSNL's past work on N970KR, which KSNL stands behind and maintains has not actually led to any disciplinary action by the FAA. Mission Air again asks the Court for an injunction to remedy disputed past harm. The FAA Report cannot be used as evidence that KSNL is going to cause irreparable harm to N32TP in the future. This is not a situation that warrants an injunction.

8

Mission Air provides only speculation, stating that KNSL *may* tamper with N32TP, in a failed attempt to meet its burden to demonstrate irreparable harm. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1210 (10th Cir. 2009) (stating "[p]urely speculative harm will not suffice"). To be clear, KSNL has no interest in continuing to do unpaid work on N32TP for Mission Air.

Further, Mission Air requests an inspection of N32TP, despite the Court's previous determination that discovery-related requests are not afforded as injunctive relief. (Order at 5.) Mission Air's attempt to use the Renewed Application to *uncover* evidence of irreparable harm does not satisfy its significant burden to demonstrate irreparable harm in advance of the injunction's issuance. *See Schrier*, 427 F.3d at 1266 (noting that speculation of what may happen in the future is not grounds for a preliminary injunction, especially when the harm can be remedied through money damages).

Despite the Court's Order, Mission Air still fails to explain how harm to N32TP, if any were to occur, cannot be compensated by money damages. *Id.* at 1267 (noting that the movant provided the court with no evidence demonstrating how the harm could not be remedied by money damages). Mission Air admits that the Court "denied [the Motion] finding that injunctive relief was not proper as money damages would cure any injury suffered by [Mission Air]." (Renewed Application at 2.) Immediately after this admission, Mission Air states, "[h]owever, since the Court's ruling on [Mission Air's] initial request, new information from the FAA… confirms [Mission Air's] concerns[.]"(Id.)

Mission Air's blatant disregard for this Court's Order is unbelievable. Regardless of Mission Air's "new information" regarding N970KR, if N32TP requires any additional

9

work, the amount of damage suffered by Mission Air could be easily calculated and compensated with money damages. Mission Air offers *no* explanation as to how the FAA Report creates non-monetary damages.

Mission Air will not suffer irreparable harm if the Court does not enter an injunction. Mission Air learned nothing from the Court's Order. The Renewed Application does not meet Mission Air's substantial burden for obtaining injunctive relief. The continued lack of irreparable harm to Mission Air is enough to deny the Renewed Application outright.

## II.     MISSION AIR WILL NOT SUCCEED ON THE MERITS.

Even if Mission Air could establish irreparable harm, which it cannot, the Renewed Application should be denied because Mission Air cannot show a likelihood of success on the merits of its claim due to KNSL's Liens. (Order at 5.) Once again, Mission Air only relies on its replevin claim. Because "the very purpose of an injunction under Rule 65(a) is to give temporary relief based on a preliminary estimate of the strength of the plaintiff's suit..., all courts agree [the] plaintiff must present a prima facie case but need not show a certainty of winning." *Coal. of Concerned Citizens to Make Art Smart v. Fed. Transit Admin. of U.S. Dep't of Transp.*, 843 F.3d 886, 901 (10th Cir. 2016) (internal citations omitted).

Mission Air still does not present a *prima facie* case for replevin, much less show a likelihood of success on that claim. Mission Air will not succeed on its replevin claim due to KSNL's Liens, which grant KSNL rightful possession of N32TP. Mission Air's argument that "KSNL does not have any ownership interest in the aircraft and instead is using it as leverage to force payment for the alleged work performed" shows that Mission

10

Air lacks a fundamental understanding of liens. (Renewed Application at 6.) Possessory liens exist for this exact purpose. Mission Air cannot request work and then refuse to pay for it.

Under Oklahoma law, to prevail on a replevin claim, Mission Air must show, ***by verification***, the following: (1) a description of N32TP; (2) that Mission Air is the owner of N32TP and ***entitled to immediate possession*** of N32TP; (3) that KSNL is ***wrongfully*** detaining N32TP; (4) the value of N32TP; (5) that N32TP was not taken by order, judgment, or certain other circumstances; and (6) a request for immediate delivery of N32TP. *See* 12 O.S. § 1571(A)(1)-(2).

Mission Air's replevin claim clearly fails. Mission Air provided no verification of its replevin claim in its initial pleading. It has not remedied this issue by submitting affidavits with the Renewed Application. More importantly, Mission Air is not ***entitled to immediate possession*** of N32TP, and KSNL is not ***wrongfully*** holding N32TP. KSNL holds valid and perfected possessory liens on N32TP based on its filing of the Liens in both Pottawatomie County and with the FAA. "After filing with the FAA, no further recordation is required for a lienholder to perfect its claim of lien on an aircraft." *Blue Sky Telluride, L.L.C. v. Intercontinental Jet Serv. Corp.*, 2014 OK CIV APP 39, ¶ 11, 328 P.3d 1223, 1227 (citing *McCormack v. Air Center, Inc.*, 1977 OK 192, ¶ 16, 571 P.2d 835, 838). Mission Air's argument that the FAA Report entitles it to immediate possession of N32TP holds no water. (Renewed Application at 6.)

KSNL's Liens were valid and perfected as of August 10, 2021 and February 2, 2022, the dates of filing the Liens with the FAA. 49 U.S.C.A. § 44108(b). As already noted by

11

the Court, KSNL's Liens invalidate Mission Air's argument that it will succeed on its replevin claim and weigh against the Court granting the Renewed Application. (Order at 6.)

### III. THE BALANCE OF EQUITIES FAVORS KSNL.

Mission Air's assertion that KSNL will not face any harm if the Renewed Application is granted once again ignores KSNL's legal right to possess N32TP. KSNL is not tampering with N32TP and does not have any intention of doing so. Second, permitting an immediate inspection violates KSNL's lien rights and is an improper attempt to conduct discovery. (Order at 5-6.) Mission Air cannot demonstrate that the balance of equities tips in its favor.

### IV. GRANTING MISSION AIR'S REQUEST FOR INJUNCTIVE RELIEF IS NOT IN THE PUBLIC INTEREST.

Granting the Renewed Application is not in the public interest. Mission Air's canned statement that there is a public interest in "[enforcing] lawful contracts and business practice and [deterring] unlawful and unethical business practices" remains true. (Renewed Application at 2.) However, Mission Air's weighing of that interest distorts the simple facts. Here, the public interest in enforcing contracts and deterring unethical business practices is best served by denying the Renewed Application, based on Mission Air's refusal to pay KSNL for work performed on N32TP.

Regarding the public interest in flight safety, Mission Air has misled the Court as to the impact of the FAA Report. The FAA has not revoked or suspended KSNL's repair station certificate, nor has it proposed to do so. In fact, the FAA has not taken any

enforcement action against KSNL. Even assuming, for the sake of argument, that there are issues with KNSL's work on N970KR, there is no safety risk, as KSNL is not working on N32TP. Additionally, N32TP is not airworthy at this time because Mission Air abruptly instructed KSNL to stop work-in-progress on N32TP. It must pass FAA inspections before it will be deemed airworthy. As such, there is no current public interest in flight safety relating to N32TP.

Finally, granting the Renewed Application would reward Mission Air for wasting judicial resources. The Renewed Application is just as legally deficient as the Motion. Mission Air's motivation is clear. It desperately wanted to present the FAA Report to the Court, despite the fact that this report will not survive scrutiny in its current form. Filing a frivolous motion should not be rewarded.

## CONCLUSION

Mission Air's Renewed Application is another failed effort to undercut KSNL's Liens. The Renewed Application is nothing more than an attempt to poison the Court's opinion of KSNL by presenting the FAA Report, although KSNL has not faced any FAA enforcement action, and the report will likely be withdrawn or substantially revised. Despite using the FAA Report as an excuse, Mission Air cannot proffer any evidence of future, irreparable harm that cannot be compensated by money damages. Additionally, Mission Air cannot succeed on its replevin claim based on KSNL's valid and perfected possessory Liens. For these reasons, KSNL respectfully requests that the Court deny Mission Air's request for injunctive relief in its entirety and award KSNL its fees and costs

in defending against the Renewed Application, constituting Mission Air's second bite at the injunction apple.

                                  Respectfully submitted,

                                  /s/ Joshua D. Burns
                                  Joshua D. Burns, OBA # 32967
                                  Margaret M. Sine, OBA # 34024
                                  **CROWE & DUNLEVY, PC**
                                  Braniff Building
                                  324 N. Robinson Ave., Suite 100
                                  Oklahoma City, Oklahoma 73102
                                  Telephone: (405) 235-7700
                                  Facsimile: (405) 239-6651
                                  joshua.burns@crowedunlevy.com
                                  meg.sine@crowedunlevy.com

                                  **ATTORNEYS FOR DEFENDANT/COUNTERCLAIM PLAINTIFF KSNL AERO, LLC**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 21, 2022, I electronically transmitted the above and foregoing instrument for filing and for transmittal of a Notice of Electronic Filing through the CM/ECF system to all ECF registrants in this case as follows:

Nicholas Atwood, natwood@rrmalaw.com

**Counsel for Plaintiff/Counterclaim Defendant**

/s/ Joshua D. Burns
Joshua D. Burns